UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO VALLE,<br><br>    Plaintiff,<br><br>    v.<br><br>PAUL MORGADO, et al.,<br><br>    Defendants. | Case No. 21-cv-05636-EMC<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Docket No. 13 |

## I. INTRODUCTION

Plaintiff Francisco Valle brings this action for damages under 42 U.S.C. § 1983 and California state law after having been wrongfully convicted of attempted murder and incarcerated for thirteen years due to the alleged misconduct of San Francisco Police Department ("SFPD") officers Paolo Morgado and Dennis Cravalho (together, "Officer Defendants"), other unknown SFPD officers and the City and County of San Francisco ("the City") (collectively, "Defendants"). Plaintiff brings twelve claims under federal and state law.

Now pending is Defendants' motion to dismiss seven of Plaintiff's claims pursuant to Rule 12(b)(6) for failure to state a claim. Docket No. 13 ("Motion to Dismiss"). For the following reasons, the Court **GRANTS in part** and **DENIES in part** Defendants' motion.

## II. BACKGROUND

A. Summary of Allegations

On May 19, 2007, when Plaintiff Francisco Valle was 51 years old, he alleges he was walking in San Francisco with his friend David Fuentes when the Officer Defendants suddenly "drove up" and Officer Cravalho "jumped out of the passenger seat with his gun drawn." Docket

No. 1 ("Compl.") ¶¶ 1, 32-35. Plaintiff immediately put his hands up to show he was unarmed, but despite his "clear demonstration that he was unarmed," Officer Morgado began shooting at him. *Id.* ¶¶ 37-38. Morgado shot Plaintiff's middle finger on his right hand, causing him to bleed, and another bullet went over Plaintiff's head. *Id.* ¶ 38. Plaintiff alleges that after Morgado began shooting his companion, David Fuentes, came running up to Plaintiff, and, "in plain sight of Morgado and Cravalho" "pulled out his own gun and shot back at Defendant Morgado." *Id.* ¶ 39. To stop Fuentes from possibly shooting an officer and end the shoot-out between Fuentes and police, Plaintiff allegedly grabbed Fuentes' gun and fled. *Id.* ¶ 40. Plaintiff was allegedly found in the vicinity, laying behind a bush, bleeding profusely. *Id.* ¶ 43. When the officers found him, they allegedly "unleashed police dogs that attacked Plaintiff and caused him to bleed from his shoulder. *Id.* ¶ 44.

Plaintiff alleges that in order to cover up their misconduct and because they were already facing disciplinary action in other cases, Morgado and Cravalho fabricated a false story in which they claimed that Plaintiff had shot at them. *Id.* ¶¶ 52-59. The Offer Defendants also allegedly erased Fuentes's participation from their account of the incident. *Id.* Plaintiff alleges Morgado and Cravalho went on to secure Plaintiff's wrongful conviction at trial for attempted murder by fabricating additional evidence and withholding exculpatory evidence that included the entirety of Cravalho's criminal history and disciplinary misconduct. *Id.* ¶¶ 52-70. As a result, Plaintiff alleges he spent thirteen years behind bars for a crime he did not commit, deprived of family, freedom, and opportunity, and locked away in harsh and dangerous conditions. *Id.* ¶¶ 100-114.

In 2017, the Court of Appeal for the State of California vacated Plaintiff's conviction, determining that Defendants had violated Plaintiff's *Brady* rights by concealing from him exculpatory and impeachment evidence regarding Morgado and Cravalho's histories of misconduct. *Id.* ¶¶ 105-106. Specifically, Plaintiff alleges there is evidence demonstrating that Defendant Officers Morgado and Cravalho are documented liars, with histories of violent and aggressive behavior toward civilians, criminal convictions, abuses of authority, and dishonesty. Compl. ¶¶ 10, 62-65. Plaintiff alleges, for example, that the California Court of Appeal, has characterized Defendant Cravalho as a "a proven teller of untruths, with an established history of

aggressive conduct towards civilians" and "belligerence," a "demonstrated propensity for throwing around his weight as a police officer," and a pattern of using his officer status to "evade accountability." *Id.* ¶¶ 64-65. Defendant Morgado allegedly has a history of prior civilian complaints alleging unprovoked aggressive behavior and brutality toward citizens, has a criminal conviction for battery of a civilian, and was fired after video indicated that he lied about using racist language and falsely arresting a U.S. Army veteran. *Id.* ¶ 63.

In 2020, the San Francisco District Attorney's Office dropped all charges against Plaintiff. *Id.* ¶¶ 106-107. Plaintiff alleges his wrongful conviction would not have occurred if not for the policies and practices of Defendant City and County of San Francisco. *Id.* ¶¶ 71-100. Among other policies and practices, Plaintiff alleges the City's failure to train, supervise and discipline rogue police officers like Morgado and Cravalho was part of a broken system that allowed officers to commit repeated misconduct with impunity. *Id.* ¶¶ 72-73, 78-79, 14. Plaintiff further alleges the City's policies and practices emboldened officers such as Morgado and Cravalho to engage in the reckless misconduct that injured him, and the lies and fabrications used to frame him. *Id.* ¶ 14.

B.    Legal Claims

Based on the above allegations, Plaintiff alleges twelve causes of action against Defendants. The first six are federal law claims under 42 U.S.C. § 1983, alleging (1) violations the Fourteenth Amendment by the Officer Defendants pursuant to City policy; (2) illegal detention and prosecution in violation of the Fourth and Fourteenth Amendments by the Officer Defendants pursuant to City policy; (3) "failure to disclose exculpatory information" in violation of due process by the Officer Defendants; (4) "failure to intervene" by the Officer Defendants pursuant to City policy; (5) "conspiracy" by the Officer Defendants to deprive him of his constitutional rights; and (6) the City had "written policies and unwritten customs" that caused Plaintiff's alleged wrongful conviction. Compl. ¶¶ 115-64. The final six claims are California state law claims for: (7) intentional infliction of emotional distress by the Officer Defendants; (8) "civil conspiracy" by the Officer Defendants; (9) "tortious hiring and retention" by the City; (10) "*respondeat superior*" against the City citing California Government Code section 815.2; (11) violation of the California Civil Code section 52.1 (the Bane Act) by the individual Officer Defendants; and (12)

"indemnification" against the City citing California Government Code section 825. *Id.* ¶¶ 165-89.

C.  Procedural Background

Plaintiff filed this action on July 22, 2021. Compl. Now pending is Defendants' motion to dismiss counts 2 (illegal detention and prosecution), 4 (failure to intervene), 5 (conspiracy), 7 (IIED), 9 (tortious hiring), 10 (respondeat superior) and 12 (indemnification) for failure to state a claim. *See* Motion to Dismiss.

### III.     LEGAL STANDARD

A.  Failure to State a Claim (Rule 12(b)(6))

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint that fails to meet this standard may be dismissed pursuant to Rule 12(b)(6). *See* Fed. R. Civ. P. 12(b)(6). To overcome a Rule 12(b)(6) motion to dismiss after the Supreme Court's decisions in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), a plaintiff's "factual allegations [in the complaint] 'must . . . suggest that the claim has at least a plausible chance of success.'" *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1135 (9th Cir. 2014). The court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). But "allegations in a complaint . . . may not simply recite the elements of a cause of action [and] must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Levitt*, 765 F.3d at 1135 (quoting *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014)). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## IV. ANALYSIS

A. Fourth Amendment Illegal Post-Process Pretrial Detention (Count 2)

Plaintiff clarifies that Count 2 for illegal detention and prosecution is a Fourth Amendment claim, Compl. ¶¶ 124-29, based on his wrongful arrest and *post-process* pretrial detention without probable cause, pursuant to the Supreme Court's articulation in *Manuel v. City of Joliet*, 137 S. Ct. 911, 918-19 (2017). In *Manuel,* the Court held that "pretrial detention can violate the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process in a criminal case." *Id.* at 918. The Court reasoned that "[t]he Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause" which can occur after a wrongful arrest, but can also continue if "legal process itself goes wrong—when, for example, a judge's probable-cause determination is predicated solely on a police officer's false statements." *Id.*

Defendants argue that Plaintiff's Fourth Amendment claim is time-barred by the statute of limitations.

### 1. Statute of Limitations

Defendants argue that Plaintiff's Fourth Amendment claim is time-barred because the statute of limitations began to run on Plaintiff's claim after he was arrested and once he was held pursuant to legal process at arraignment more than thirteen years ago in 2007. Motion to Dismiss at 6-7. Defendants analogize to the claim accrual rule for § 1983 false arrest and false imprisonment claims under the Fourth Amendment, which the Supreme Court held in *Wallace v. Kato*, 549 U.S. 1091 (2007) accrue after the time of arrest and after the commencement of legal process, respectively. Plaintiff, by contrast, analogizes his Fourth Amendment post-process *Manuel* claim to a § 1983 due process claim for malicious prosecution, and, argus that the clock did not start on his claim until after criminal proceedings were resolved in his favor in 2020.

The parties' competing arguments highlight that the question of the proper accrual date for a Fourth Amendment claim for unlawful post-process detention as recognized in *Manuel* remains an open question. In *Manuel*, the Supreme Court expressly left open the question of what the proper accrual date should be for § 1983 challenging post-process pretrial detention under the

5

Fourth Amendment. The Court examined the rationales and limitations to analogizing to the false arrest context (where the accrual date would be immediately after the arrest) and to the malicious prosecution context (where the accrual date would be upon favorable termination of the underlying proceedings). 137 S.Ct. at 921-22. But, the Court declined to answer the question of when a Fourth Amendment post-process claim accrues, and instead, left "consideration of this dispute to the Court of Appeals." *Id.* at 922.

On remand, the Seventh Circuit rejected both analogies, and held that the accrual date for a Fourth Amendment challenge to post-process detention was the date that the plaintiff was released from custody – in that case, pretrial custody. *Manuel v. City of Joliet, Illinois*, 903 F.3d 667, 669 (7th Cir. 2018) (*Manuel II*) ("We do not accept either approach. We hold that Manuel's claim accrued on May 5, when he was released from custody."). To date, the Seventh Circuit appears to be the only Court of Appeals to have addressed when a Fourth Amendment post-process claims accrues, and it does not appear that any federal district courts in California have opined on the issue. The Seventh Circuit's reasoning is persuasive.

The Seventh Circuit reasoned that the *Wallace* rule setting the accrual date for Fourth Amendment claims at the moment that a person is arraigned was based on the premise that Fourth Amendment rights are extinguished once legal process begins—"but that line does not survive *Manuel* [*I]* which held that wrongful pretrial custody violates the Fourth Amendment not only when it precedes, but also when it follows, the start of legal process in a criminal case." *Manuel II*, 903 F.3d at 669. Thus, the Seventh Circuit explained, "[w]hen a wrong is ongoing rather than discrete, the period of limitations does not commence until the wrong ends." Similarly, the *Manuel II* Court rejected the analogy to malicious prosecution, because after the Supreme Court's decision in *Manuel I*, "[t]he problem is the wrongful custody" -- "[t]here is no such thing as a constitutional right not to be prosecuted without probable cause." *Id.* at 670. "But there *is* a constitutional right not to be held in custody without probable cause." *Id.* The Court continued, "Because the wrong is the detention rather than the existence of criminal charges, the period of limitations also should depend on the dates of the detention." *Id.* This conclusion, the Seventh Circuit reasoned, flowed from the Supreme Court's analysis in *Manuel I,* which "shows that the

6

wrong of detention without probable cause continues for the length of the unjustified detention." *Id.* at 669.

Finally, the Seventh Circuit explained that its rule is supported by the Supreme Court's principles, that "a claim cannot accrue until the would-be plaintiff is entitled to sue, yet the existence of detention forbids a suit for damages contesting that detention's validity." 903 F.3d at 670. Specifically, the Court explained:

> *Preiser v. Rodriguez*, 411 U.S. 475 (1973), holds that the right way to contest ongoing state custody is by a petition for a writ of habeas corpus under 28 U.S.C. § 2241 or § 2254, not by an action under § 1983 seeking an injunction requiring release. *Heck v. Humphrey*, 512 U.S. 477 (1994), adds that § 1983 cannot be used to obtain damages for custody based on a criminal conviction—not until the conviction has been set aside by the judiciary or an executive pardon. Although *Heck* dealt exclusively with § 1983 proceedings that imply the invalidity of a conviction, *Edwards v. Balisok*, 520 U.S. 641 (1997), extended its approach to custody that rests on the decision of a prison's administrative panel revoking some of a prisoner's good-time credits.
>
> After *Preiser*, *Heck*, and *Edwards*, § 1983 cannot be used to contest ongoing custody that has been properly authorized. Those decisions do not concern the way to deal with executive custody that lacks a judicial imprimatur—for example, detention in a police department's cells before presentation to a judge. But Manuel was held by authority of a judicial decision that probable cause existed to show that he had committed a drug offense. He contends that the police hoodwinked the judge by falsely asserting that the pills he possessed had tested positive for an unlawful drug, and if he is right he is entitled to damages. Still, his detention was judicially authorized, which given *Preiser* means that a § 1983 suit had to wait until his release. *Heck* tells us that a claim does not accrue before it is possible to sue on it. 512 U.S. at 489–90, 114 S.Ct. 2364. Once he was out of custody and could sue, Manuel's claim accrued.

*Id.* at 670-71. Importantly, in *Manuel II,* after the Plaintiff was released from pretrial custody, he was not tried and was never convicted or incarcerated. Thus, the Seventh Circuit did not have to address the situation where as here Plaintiff alleges he was unlawfully subjected to pretrial detention under the Fourth Amendment and held through trial where he was maliciously prosecuted and wrongfully convicted in violation of due process.

However, these factual difference as to the length of pretrial detention does not alter the fundamental analysis of the accrual date for Plaintiff's Fourth Amendment claim. Since Plaintiff's Fourth Amendment claim is not an assertion of the non-existent "constitutional right not to be

7

1  prosecuted without probable cause," but rather seeks vindication of his "constitutional right not to
2  be held in custody without probable cause," *id* at 670, the accrual date for his Fourth Amendment
3  claim is the date at which he was no longer detained without probable cause.  "[T]he wrong of
4  detention without probable cause continues for the length of the unjustified detention." *Id.* at 669.
5  "That's the principal reason why the claim accrues when the detention ends." *Id.*  Here, Plaintiff's
6  detention without probable cause ended when he was convicted on December 9, 2010.  Compl. ¶
7  101.  Once Plaintiff was convicted, his *conviction* became the legal basis for Plaintiff's
8  incarceration; the conviction superseded the prior probable cause determination.  While Plaintiff is
9  entitled to challenge – and does challenge – his subsequent incarceration based on his allegedly
10 wrongful conviction, that challenge is based on Due Process, not a Fourth Amendment claim of
11 detention without probable cause.  *See Manuel II*, 903 F.3d at 699 ("*Manuel* [*I*] . . . held that
12 wrongful **pretrial** custody violates the Fourth Amendment not only when it precedes, but also
13 when it follows, the start of legal process in a criminal case.") (emphasis added).  In sum, the
14 accrual date of Plaintiff's Fourth Amendment claim runs from December 9, 2010.
15     Next, to determine whether the statute of limitations ran on Plaintiff's claim § 1983 claim,
16 the Court must "apply [California's] statute of limitations for personal injury actions, along with
17 [California's] law regarding tolling, including equitable tolling, except to the extent any of these
18 laws is inconsistent with federal law." *Canatella v. Van De Kamp*, 486 F.3d 1128, 1132 (9th Cir.
19 2007) (internal quotation marks omitted).  California's two-year statute of limitations for personal
20 injury actions applies to Plaintiff's claims.  *See* Cal. Civ. Proc. Code § 335.1; *Canatella*, 486 F.3d
21 at 1132–33.  This means the statute of limitations ran on Plaintiff's Fourth Amendment claim on
22 December 9, 2012, unless Plaintiff's claim was tolled under California law.
23     Plaintiff argues that his Fourth Amendment post-process detention claim would necessarily
24 impugn his underlying criminal conviction because he challenges the allegedly fabricated
25 evidence that was used to wrongfully establish probable cause *and* to secure his conviction.  Thus,
26 Plaintiff argues he would have been barred by *Heck* from bringing his § 1983 claim until *after* his
27 conviction was overturned in 2020.  *See Heck,* 512 U.S. at 487.  He argues, then, that the
28 application of *Heck* tolled the statute of limitations for his Fourth Amendment claim until the date

8

that he received a favorable termination of his criminal proceedings (allegedly in 2020—although, Defendants contest whether Plaintiff received a "favorable termination" within the meaning of *Heck*).

The problem for Plaintiff, however, is that although he asserts his § 1983 claim would necessarily impugn his criminal conviction and his claim would be barred by *Heck*, he never filed such an action, and, thus, no court ever held that *Heck* applied and tolled the statute of limitations for his claim. The Ninth Circuit has held that toling under *Heck* is not automatic. In *Mills v. City of Covina*, 921 F.3d 1161, 1168 (9th Cir. 2019), the court held *Heck* did not toll the claims because the plaintiff never obtained a judicial determination that *Heck* barred his claims.

Specifically, the *Mills* Court looked to California law to determine whether the plaintiff's Fourth Amendment claims, filed more than three years after his search and arrest, were tolled. *Id* at 1166. It noted that Cal. Code Civ. P. § 356 provides, "[w]hen the commencement of an action is stayed by injunction or statutory prohibition, the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action." The California Supreme Court explained that § 356 "has been applied in situations where the action is legally prohibited by other means than injunctions or statutory prohibition." *Mills,* 921 F.3d at 1167 (citing *Hoover v. Galbraith*, 7 Cal. 3d 519, 526 (1972) (collecting cases)). The Ninth Circuit observed that "while the California Supreme Court has not specifically addressed the impact of a judicially created bar on § 356, it has held 'that the running of the statute of limitations is suspended during any period in which the plaintiff is legally prevented from taking action to protect his rights.'" *Id.* (quoting *Dillon v. Bd. Of Pension Comm'rs of City of Los Angeles*, 18 Cal. 2d 427, 431 (1941)).

The *Mills* Court noted, however, that "in *Hoover* and each case it discussed, a definitive bar to commencing an action was required to trigger tolling under § 356, regardless whether the prohibition was by statute, injunction, or otherwise." *Id. (*citing *Hoover*, 7 Cal. 3d at 526). Like Plaintiff here, the plaintiff in *Mills* alleged that it would have been futile to have filed his Section 1983 claims for false arrest, false imprisonment, and other Fourth Amendment violations at the time that they were committed because they would have been dismissed under *Heck*. The court

9

1  rejected that argument. *Mills* reasoned that "[i]n such circumstances, it is not known whether the

2  claim is barred by *Heck* until the claim is filed and the district court determines that it will impugn

3  an extant conviction." *Id.* at 1168. "Until that determination is made, a plaintiff is not 'legally

4  prevented from taking action to protect his rights'" to qualify for tolling under § 356 as required by

5  *Hoover*. *Id.*

6      The Ninth Circuit summarized:

> Ultimately, nothing prevented Mills from commencing his suit during his criminal appeal. Had he done so, the district court could have determined whether his claims impugned his conviction. If so, the district court could have dismissed those claims without prejudice, and Mills could have refiled the claims once his conviction was reversed. *See Wallace*, 549 U.S. at 395 n.4 ("If under those circumstances he were not allowed to refile his suit, *Heck* would produce immunity from § 1983 liability, a result surely not intended."). If Mills's claims did not impugn his conviction, the suit could have proceeded. Because Mills was not legally precluded from commencing his § 1983 claims during the pendency of his criminal appeal, he was not "legally prevented from taking action to protect his rights" and tolling under § 356 was not triggered.

14  *Id.* at 1168.

15      *Mills* controls here. Plaintiff Valle's Fourth Amendment claim challenging his pretrial

16  detention without probable cause accrued upon the date of his conviction, *i.e.,* the date on which

17  he was no longer subject to *pretrial detention*. *See Manuel II,* 903 F.3d at 670. The statute of

18  limitations for Plaintiff's Fourth Amendment Section 1983 claim began to run on the date of his

19  conviction, December 9, 2010. Plaintiff Valle could have filed his Section 1983 claim within the

20  statute of limitations, until December 9, 2012. If Plaintiff's Section 1983 claim impugned his

21  conviction, the district court would have dismissed under *Heck*, and this would likely have tolled

22  his claim until his conviction was reversed. *See Mills*, 921 F.3d at 1168. If the district court

23  determined that *Heck* did not apply, then Plaintiff could have proceeded to litigate his claim. *Id.*

24  Here, however, like in *Mills*, Plaintiff did not file a § 1983 action alleging violations of the Fourth

25  Amendment until *after* the statute of limitations had run. No determination was ever made that

26  *Heck* applied, and, thus, the claim was not tolled. *Id.*

27      Plaintiff does not distinguish *Mills* and his citations to *McDonough v. Smith*, 139 S. Ct.

28  2149 (2019) and *Roberts v. County of Riverside*, No. EDCV191877JGBSHKX, 2020 WL

1    3965027, at *6 (C.D. Cal. June 5, 2020) are inapplicable, as those cases do not analyze the accrual

2    date of a *Fourth Amendment* claim under § 1983 nor the circumstances under which a *Fourth*

3    *Amendment* claim is tolled.  Rather, *McDonough* deals with a claim alleging fabricated evidence

4    leading to conviction under the due process clause, 139 S.Ct. at 2155, and *Roberts* assessed the

5    accrual and tolling of state law claims, 2020 WL 3965027at *6.

6          Plaintiff's Fourth Amendment claim is time-barred.  Plaintiff's Count 2 is, thus, dismissed

7    with prejudice.

8    B.    <u>Failure to Intervene (Count 4)</u>

9          Defendants challenge whether Plaintiff has sufficiently alleged his failure to intervene

10   claim (Count IV).  Motion to Dismiss at 8-9.  The Ninth Circuit has recognized this cause of

11   action, flowing from the principle that "police officers have a duty to intercede when their fellow

12   officers violate the constitutional rights of a suspect or other citizen." *Cunningham v. Gates*, 229

13   F.3d 1271, 1289 (9th Cir. 2000) (quoting *United States v. Koon*, 34 F.3d 1416, 1447 n.25 (9th Cir.

14   1994)).  However, the Ninth Circuit has recognized that officers can be held liable for failing to

15   intercede only if they had an opportunity to intercede.  *Id.* (citing *Bruner v. Dunaway*, 684 F.2d

16   422, 426–27 (6th Cir.1982); *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 207 n. 3 (1st

17   Cir.1990) (granting arresting officers' motion for summary judgment because the officers had no

18   "realistic opportunity" to prevent an attack committed by another officer)).

19         Defendants argue that Plaintiff's complaint fails to state a claim that any particular

20   Defendant had an opportunity to intercede.  Specifically, they contend that "if the individual

21   Officer Defendants personally created the risk, then they are liable, if at all, for their primary

22   conduct and not based on a secondary theory of liability such as failure to intervene." Motion to

23   Dismiss at 9 (citing *Trujillo v. Jacquez*, No. 10-cv-5183-YGR, 2012 WL 879267, at *9 (N.D. Cal.

24   Mar. 15, 2012) (drawing a distinction between primary and secondary defendants' liability, and

25   evaluating a failure to intervene claim only as to the secondary defendants)).

26         Plaintiff counters that Defendants Morgado and Cravalho each stood by and did not

27   intervene during the *prolonged* investigation and prosecution of Plaintiff, while the other acted to

28   frame Plaintiff for that murder, thereby violating his constitutional rights.  Opposition at 15;

11

Compl. ¶¶ 138-39, 52-59.  Plaintiff alleges that the Defendants worked together to violate Plaintiff's constitutional rights, and thus, that each defendant had the opportunity to intervene at numerous points.  *See id.*  Each Defendant could have intervened in his partner's fabrication of police reports and other evidence, for example, as well as to prevent the use of those reports and statements at trial, but chose not to do so.  *See id.*

Defendants' argument that Plaintiff's claim must fail because each Defendant was a primary actor engaged in alleged misconduct, Docket No. 24 ("Reply") at 6, finds no support in any persuasive authority.  *Trujillo,* the one case Defendants rely on, does not announce a principle that Defendants who are themselves responsible for misconduct cannot *also* be responsible for failing to intervene in the misconduct of other Defendants.  The Ninth Circuit requires only that a defendant have an opportunity to intercede.  Plaintiff has sufficiently alleged facts that both Defendants Cravalho and Morgado had such an opportunity to intervene to prevent the misconduct of the other during the extended period of time in which each allegedly fabricated testimony to wrongfully secure Plaintiff's conviction.

Defendants' motion to dismiss Count 4 is denied.

C.   <u>Conspiracy (Count 5)</u>

Without citation to any authority, Defendants make a cursory argument that Plaintiff's federal law conspiracy claim in Count V is insufficiently pled.  Motion to Dismiss at 9-10. Defendants do not dispute that Plaintiff has alleged the elements of the conspiracy claim, but assert that he does not allege "facts" supporting that an agreement was made during a "fast-moving, dramatic shoot-out." *Id.* at 9-10.

To ultimately prove a § 1983 conspiracy at trial, a plaintiff must "show an agreement or 'meeting of the minds' to violate his constitutional rights."  *Ward v. EEOC*, 719 F.2d 311, 314 (9th Cir. 1983). Such an agreement "may be inferred from conduct and need not be proved by evidence of an express agreement"; a plaintiff need only point to some "facts probative of a conspiracy." *Id.*  And, while each participant must "share the common objective" of the conspiracy, "each participant in the conspiracy need not know the exact details of the plan. *Franklin v. Fox*, 312 F.3d 423, 441 (9th. Cir. 2002); *see also United Steelworkers of Am. v. Phelps*

12

*Dodge Corp.*, 865 F.2d 1539, 1541 (9th Cir. 1989) (*en banc*).

At the pleading stage, Plaintiff need not allege, prior to discovery, every single fact about the conspiracy; only those sufficient, in light of the "entire factual context" to be "suggestive of an agreement to engage in illegal conduct." *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017). In addition, the pleading standard is relaxed for conspiracy claims when, as here, "the relevant facts are known only to the defendant." *Id.* (quoting *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995)).

Plaintiff pleads facts sufficient to state a claim under *Soo Park*. Plaintiff alleges the conspiracy began "*[a]fter* the shooting," as "Defendants Morgado and Cravalho concocted a false story to cover up their egregious and reckless misconduct, and to shift the blame to Plaintiff, knowing that their coverup would result in false charges and the wrongful conviction of an innocent man." Compl. ¶ 53 (emphasis added). Plaintiff details Defendants' unlawful objective. *Id.* at ¶¶ 9-10, 144-47. Plaintiff pleads acts taken by the Defendants in furtherance of the scheme and in parallel, including fabrication of evidence. *Id.* ¶¶ 54-59, 144-47.

Defendants' motion to dismiss Count 5 is denied.

D.    Intentional Infliction of Emotional Distress (Count 7)

Defendants raise two challenges to Plaintiff's state law intentional infliction of emotional distress ("IIED") claim. First, they argue that the Officer Defendants "are immune from a claim for IIED based on allegations that they improperly investigated a crime" under Cal. Gov. Code § 821.6. Motion to Dismiss at 10-11. Second, they contend that even if Defendants are not immune, Plaintiff's "conclusory allegations as to intent are insufficient to state a claim." *Id.* at 11.

1.    Immunity

Cal. Gov. Code § 821.6 provides: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." The California Supreme Court has expressly confined the statutory immunity granted by § 821.6 to causes of action for malicious prosecution. *Sullivan v. Cty. of Los Angeles*, 12 Cal. 3d 710, 721 (1974). *Sullivan* held that § 821.6 is "intended to protect public employees from liability only for *malicious*

13

*prosecution.*" *Id.* at 719. The Ninth Circuit is in accord, limiting immunity under § 821.6 to malicious prosecution claims. *See Sharp v. Cty. of Orange,* 871 F.3d 901, 920 (9th Cir. 2017) (rejecting attempted expansion of immunity under § 821.6, because that section is "limited to malicious-prosecution claims"); *Mendez v. Cty. of Los Angeles*, 897 F.3d 1067, 1083 (9th Cir. 2018) (refusing to apply § 821.6 to negligence claim and rejecting attempted expansion of this immunity to cover all acts during an investigation); *Garmon v. Cty. of Los Angeles*, 828 F.3d 837, 847 (9th Cir. 2016).

Thus, Defendants are immune from Plaintiff's IIED claim as to any conduct that would fall under the state tort of malicious prosecution, which includes any conduct by Defendants *after* the initiation of lawful process. *Sullivan,* 12 Cal. 3d at 720. Accordingly, the Court dismisses Plaintiff's IIED claim with prejudice, to the extent it is based on allegations of misconduct "for any period after his arraignment on criminal charges." *Wheat v. Lee*, No. C-12-6299 EMC, 2013 WL 2285174, at *11 (N.D. Cal. May 23, 2013). Defendants, however, are not immune from Plaintiff's IIED claim for conduct *before* Plaintiff's arraignment on criminal charges, if Plaintiff has sufficiently pled facts to state an IIED claim for such conduct. *See also* Opposition at 21.

2. <u>Well-Pleaded Facts to State IIED Claim for Defendants' Pre-process Conduct</u>

To prevail on the intent element of an IIED claim at trial, a plaintiff must establish that the defendant acted "with the intention of causing, or reckless disregard of the probability of causing, emotional distress." *Jaramillo v. City of San Mateo*, 76 F. Supp. 3d 905, 925-26 (N.D. Cal. 2014) (citing, *e.g.*, *Catsouras v. Dep't of Cal. H'way Patrol*, 181 Cal.App.4th 856, 874 (2010)). At the pleading stage, Plaintiff need only plead sufficient facts to raise an inference of the requisite intent or reckless disregard. *Duenez v. City of Manteca*, No. CIV. S-11-1820 LKK, 2012 WL 4359229, at *15 (E.D. Cal. Feb. 23, 2012).

Plaintiff's allegations of pre-process conduct include assertions that Defendants Morgado and Cravalho "drove the[ir] car to where Plaintiff was standing, almost running him over," that Morgado shot at plaintiff without provocation while Plaintiff put his hands up to show he was unarmed, that when Defendants found Plaintiff in laying in and bleeding "they unleashed police dogs that attacked Plaintiff," unknown Officer Defendants "interrogated Plaintiff in the ambulance

14

despite the fact that he was in extreme distress" and bleeding, he was struck by unknown officers who injured his ribs, and he was placed in solitary confinement. Compl. ¶¶ 29-51. These factual allegations are sufficient to "raise an inference of the requisite intent or reckless disregard" for Plaintiff to state a claim for IIED for Defendants' pre-process conduct. *Duenez*, 2012 WL 4359229, at *15.

In short, the motion to dismiss Plaintiff's IIED claim (Count 7) is denied as to any alleged conduct by Defendants *before* Plaintiff was arraigned and is granted as to any alleged conduct by Defendants *after* Plaintiff was arraigned because Defendants are entitled to immunity from liability for conduct that would fall under the state tort of malicious prosecution under Cal Gov. Code § 821.6.

E.   <u>Tortious Hiring and Retention (Count 9)</u>

Plaintiff brings a claim against the City for its tortious hiring and retention of Officers Morgado and Cravalho. Compl. ¶¶ 174-178. However, under California law, there is no statutory basis nor any other *direct* cause of action against a governmental entity, like the City, for negligent hiring, supervision, or training of its employees. *de Villers v. County of San Diego*, 156 Cal.App.4th 238, 255 (2007) ("We conclude that a direct claim against a governmental entity asserting negligent hiring and supervision, when not grounded in the breach of a statutorily imposed duty owed by the entity to the injured party, may not be maintained."). Instead, the parties agree that public entity is liable for an injury only where expressly provided by statute. Cal. Gov. Code, § 815, subd. (a); *Brown v. Poway Unified School Dist.*, 4 Cal.4th 820, 829 (1993).

Here then, the parties agree that Plaintiff's tortious hiring and retention claim must proceed under a theory of vicarious liability the statutory basis of which lies in Cal. Gov. Code § 815.2. Section 815.2 provides that a public entity "liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee."

When "it is undisputed that [public entity] employees . . . were acting within the scope of their employment, [the public entity's] potential liability. . . turns on ordinary and general

15

principles of tort law." *Regents of Univ. of California v. Superior Ct.*, 4 Cal. 5th 607, 619 (2018) (citation omitted). When certain relationships give rise to a duty of care, a public entity can be held *vicariously* liable for a supervisor's negligent hiring and supervision of their employees under § 815.2. *C.A. v. William S. Hart Union High School Dist.*, 53 Cal.4th 861, 865 (2012). Such a claim of vicarious liability differs from a claim of direct liability for negligent supervision. *de Villers* held that a public entity cannot be held *directly* liable for negligent hiring, whereas *Hart* held that a public entity can be held *vicariously* liable for the negligent hiring by a supervising employee acting within the scope of their employment. *Hart* expressly distinguished *de Villers* on this ground. *Hart*, 53 Cal. 4th at 874.

A supervisor's "duty to control, warn, or protect may be based on the defendant's relationship with "either the person whose conduct needs to be controlled or [with] ... the foreseeable victim of that conduct." *Regents*, 4 Cal. 5th at 619 (citation omitted). "Specifically, a duty to control may arise if the supervisor has a special relationship with the foreseeably dangerous person that entails an ability to control that person's conduct." *Id.* A duty may also arise if Plaintiff alleges that a "special relationship exists" between Plaintiff and the alleged supervisors, who had responsibility to supervise Officers Cravalho and Morgado. *See Estate of Osuna v. Cty. of Stanislaus*, 392 F. Supp. 3d 1162, 1182 (E.D. Cal. 2019); *Lindsay v. Fryson*, No. 2:10-cv-02842-LKK-KJN, 2012 WL 2683019, at \*6 (E.D. Cal. July 6, 2012) (noting that *William S. Hart* "limited the viability of the type of vicarious liability claim at issue...to situations where the supervisory or administrative personnel have a 'special relationship' with the plaintiff").

Although Plaintiff has not alleged a special relationship between Plaintiff with any supervisory officers, he asserts that the supervisory officers had a "special relationship with the foreseeably dangerous person[s]" – *i.e.*, Defendants Cravalho and Morgado. This gives rise to their ability and duty to control the Defendants. *Regents,* 4 Cal. 5th at 619.

Plaintiff pleads facts sufficient to demonstrate such a relationship. In addition to the employer-employee relationship, *see Brown v. USA Taekwondo*, 11 Cal.5th 204, 216 (2021) ("Relationships between . . . employers and employees . . . are [] examples of special relationships that give rise to an affirmative duty to protect" because the "special relationship puts the defendant

16

in a unique position to protect the plaintiff from injury"), Plaintiff alleges Defendants Cravalho and Morgado were "foreseeably dangerous person[s] based on their long histories of prior complaints of aggressive brutality towards civilians and abuses of authority." Compl. ¶ 62. For example, Plaintiff alleges that Morgado's complaint history, included accusations that he was involved in the killing of civilian Asa Sullivan, the unprovoked attack on civilian James Washburn; the assault and false arrest of civilian Charles Haynes; and that he had been convicted criminally of battery on a civilian. *Id* ¶ 63. And the complaint alleges that Cravalho had been criminally convicted for misconduct and that the California Court of Appeal stated he had "established history of aggressive conduct towards civilians." *Id.* ¶ 65. And, as noted above, both were found to be documented liars.

Defendants' motion to dismiss Count 9 is denied.

F.    *Respondeat Superior* (Count 10)

Plaintiff asserts a *respondeat superior* claim against Defendant City for the state-law violations of the Defendant Officers, also pursuant to Cal. Gov. Code § 815.2. As explained above, § 815.2 makes the City liable for the state-law torts of its employees.

Defendants argue that the claim should be dismissed (1) to the extent that any of the underlying state law claims are dismissed, and (2) to the extent that Plaintiff seeks *respondeat superior* liability for its federal law claims under § 1983. Plaintiff has adequately alleged a number of state law claims (and, indeed, Defendants declined to challenge several of Plaintiff's state law claims), and Plaintiff agrees that he alleges *respondeat superior* liability for only for his state law claims, not his § 1983 claim.

Defendants' motion to dismiss Count 10 is denied.

G.    Indemnification (Count 12)

Defendants seek dismissal of Plaintiff's claim for indemnification. Motion to Dismiss at 15. According to Defendants, indemnification under Cal. Gov. Code § 825 does not give rise to a separate cause of action. *Id.* Defendants are correct. As the California Supreme Court put it:

> Indemnity [under section 825] does not provide additional rights to plaintiffs. It is the defendant and not the plaintiff who is given a separate cause of action for reimbursement under Government Code

17

> section 825. The plaintiff in a tort claim against a governmental employee appears to be merely a potential and incidental beneficiary of the indemnification provisions.

*Williams v. Horvath*, 16 Cal. 3d 834, 845 (1976); *see also Roberts v. Cty. of Riverside*, No. EDCV191877JGBSHKX, 2020 WL 3965027, at *9 (C.D. Cal. June 5, 2020).

Thus, Defendants' motion to dismiss Count 12 is granted, and Count 12 is dismissed with prejudice.

## V.     CONCLUSION

The Court **GRANTS** Defendants' motion to dismiss Counts 2, 12 and 7 (as to alleged misconduct after Plaintiff was arraigned) with prejudice, and **DENIES** the motion as to all other counts.

This order disposes of Docket No. 13.

**IT IS SO ORDERED**.

Dated: November 24, 2021

_____
EDWARD M. CHEN
United States District Judge